STATE OF CONNECTICUT *v.* RUDOLPH VILHOTTI
(4087)

DUPONT, C. J., BORDEN and DALY, Js.

Argued March 5—decision released August 4, 1987

*Barry S. Moller*, with whom was *Joette Katz*, public defender, and, on the brief, *Martin J. Minnella* and *James P. Mooney*, for the appellant (defendant).

*Bernadette Conway*, deputy assistant state's attorney, with whom was *Robert D'Andrea*, assistant state's attorney, for the appellee (state).

DALY, J. The defendant was tried by a jury in October, 1984. The trial resulted in a mistrial by virtue of a hung jury. In February, 1985, the defendant was again tried by a jury. He was convicted of robbery in the first degree, a violation of General Statutes § 53a-134.[1] From the judgment rendered upon the conviction, the defendant has appealed.

The defendant claims on appeal that the trial court erred (1) in not charging the jury properly, and (2) in failing to suppress several out-of-court and in-court identifications. In the first claim, the defendant argues that the jury charge, even though almost verbatim to that requested by the defendant, was erroneous because it confused the jury as to the element of intent. The defendant's second claim is that the identifications by the witnesses were tainted by impermissively suggestive procedures and should therefore have been excluded from the trial.

---

[1] General Statutes § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver . . . or other firearm . . . ."

The jury could reasonably have found the following facts. On April 10, 1981, at about 2:55 p.m., Chris LaBranche was third in line at the drive-in window of the Thomaston Savings Bank. LaBranche, who was waiting to cash a check, noticed a gray or silver white car back into a parking space. She observed the driver for approximately five minutes, and described him as a white male who was overweight and had gray and black hair. At that time, Elizabeth Weeks, a bank teller employed by the Thomaston Savings Bank, was working at the drive-in window. As a car pulled up, Weeks pushed the window tray toward the car without looking up. Upon pulling the window tray in she discovered a brown paper bag. At this point, Weeks then looked up and observed a man pointing a gun at her. Instinctively, Weeks tripped the alarm while filling the brown paper bag with $4900 in cash. After handing over the money, Weeks tried to read the license plate number, but discovered that the license plate was covered with a red rag. The entire episode lasted approximately one and one-half to two minutes. Weeks, however, stared at the culprit at a distance of only three feet for fifteen seconds. Weeks described the thief as a fifty year old white male with salt and pepper hair, a pock-marked face and a heavyset build. Additionally, Weeks assisted the investigation by helping the Thomaston police draft a composite sketch.

At approximately 3:30 p.m., on the same day, Lois Schenkel was driving on Valley Road in Harwinton. Schenkel noticed a car parked to the left side of the road in a driveway. As she passed the car, she made a careful observation of both the car and the driver. Schenkel described the car as being gray and in a dilapidated condition. The driver was described as being fifty-five years old with pushed back hair. Police later found a red rag where Schenkel spotted the parked car. Officer Edward Grabherr, of the Thomaston police depart-

ment, presented Weeks with several photographs subsequent to the robbery in an attempt to identify the bank robber. Weeks was shown six photographs in three sittings without identifying the robber.

On January 20, 1983, two Waterbury detectives visited the Thomaston Savings Bank to ask the bank employees if any of three individuals had recently opened safety deposit boxes. This inquiry was part of the investigation of a 1982 robbery of the Colonial Bank in Waterbury. The Waterbury detectives individually interviewed the bank employees and showed each employee three photos. Upon being shown the three photos, Weeks identified the defendant's photo as the person who had committed the 1981 robbery of the Thomaston Savings Bank (hereinafter the Weeks identification). The Waterbury detectives were unaware of the robbery Weeks was referring to and, consequently, they did not understand her reaction.

On January 23, 1983, Grabherr showed LaBranche a photo array of seven white males, three of whom had mustaches. From this array, LaBranche positively identified the defendant as the driver of the car she saw at the bank the day of the robbery (hereinafter the LaBranche identification). Upon being shown the same array, Schenkel also identified the defendant as the man she saw in the car parked at the side of the road on the day of the robbery (hereinafter the Schenkel identification). All three witnesses made positive identifications in the courtroom.

I

In his first claim, the defendant maintains that the trial court erred in its charge to the jury. Specifically, the defendant asserts that the trial court's charge on intent was "misleading, confusing and erroneous." The end result of the trial court's charge, according to the defendant, was that the jury was misled and confused,

allowing conviction on a diluted standard of proof of the required intent for first degree robbery. No objection or exception to the charge was made at trial. In fact, the charge given by the trial court was specifically requested by the defendant.[2] The defendant now seeks review of his claim under *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973).

While we recognize that instructions which allegedly dilute the state's burden of proof may implicate a defendant's fundamental rights; *State* v. *Perez*, 10 Conn. App. 279, 283, 523 A.2d 508 (1987); our Supreme Court has held that " 'error induced by an appellant cannot be a ground for reversal and will not be reviewed. *State* v. *Ross*, 189 Conn. 42, 47, 454 A.2d 266 (1983); *State* v. *Kish*, 186 Conn. 757, 769, 443 A.2d 1274 (1982).' *State* v. *Hinckley*, 198 Conn. 77, 81 n.2, 502 A.2d 388 (1985)." *State* v. *Silveira*, 198 Conn. 454, 467, 503 A.2d 599 (1986). Because the portion of the court's charge involving specific intent was given exactly as the defendant requested, we hold that the defendant's claim is not entitled to review.

II

A

### THE WEEKS IDENTIFICATION

The defendant claims that the trial court should have suppressed the in-court and out-of-court identifications. The defendant asserts that the photographic identifi-

---

[2] It is clear from the record that the court's entire charge, as given, was practically verbatim to that requested by the defendant. Moreover, the section that the defendant now claims was erroneous is precisely what the defendant requested. The trial court's charge on intent was as follows: "The crime requires proof of specific intent before a defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent, the state must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law."

cations by the three state's witnesses were the product of impermissibly suggestive police procedures, and, therefore, the end results were unreliable identifications. In moving to suppress identification evidence, the defendant must prove that the identification by the witness was a result of an unconstitutional procedure. *State* v. *Collette,* 199 Conn. 308, 310, 507 A.2d 99 (1986). Our courts have used a two-pronged test to determine whether a particular identification procedure violated due process rights. *State* v. *Amarillo,* 198 Conn. 285, 291, 503 A.2d 146 (1986); *State* v. *Farrar,* 7 Conn. App. 149, 157, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986). The first prong is to determine if the procedure was impermissively suggestive. The second prong focuses on whether the identification, although impermissively suggestive, was nonetheless reliable based upon an examination of the totality of the circumstances.

Simply stated, the defendant's claim is that the identification procedure used by the Waterbury detectives was impermissively suggestive because it singled out the defendant. The record indicates that the Waterbury detectives showed Weeks three pictures and an explanation of their relevance to their investigation of the 1982 Waterbury robbery. The purpose of the presentations of the photographs was to assist Waterbury police in their search of the suspects in the Waterbury robbery. Waterbury police theorized that the suspects would use another bank's safety deposit boxes to hold the stolen money, a common practice of bank robbers. The defendant claims that, armed with the knowledge that the three individuals whose photographs were shown were suspects in a similar crime, the likely conclusion was that one of the three robbed the Thomaston Savings Bank.

The defendant's analysis is without merit because it assumes a connection between the Waterbury investi-

gation and the Thomaston Savings Bank robbery. The trial court found that no such connection existed. In fact, the Weeks identification of the defendant was clearly unexpected. The record indicates that the Waterbury detectives were unaware of the April 10, 1981 robbery until Weeks' identification.

In determining whether a particular procedure is suggestive, courts examine the circumstances surrounding the procedure. It is generally held that police procedures are suggestive where the circumstances surrounding the identification indicate "to the victim that she should positively identify the defendant." *State* v. *Gordon,* 185 Conn. 402, 414, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982). In this case, Weeks' identification of the defendant was clearly unexpected. The procedure used by the Waterbury police accidentally aided in the defendant's identification.

This identification is analogous to an accidental confrontation between a witness and a defendant. Weeks' identification of the suspect of the 1981 robbery was not the intended result nor was it a result considered by the Waterbury police. The courts have held that an accidental confrontation between a witness and a defendant does not result in a tainted identification. *State* v. *Villafane,* 171 Conn. 644, 657, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977). In *State* v. *Anderson,* 6 Conn. App. 15, 19–20, 502 A.2d 446 (1986), the witness spontaneously identified the defendant as he entered the police station. This court upheld the trial court's ruling that the identification was not tainted and that the defendant's due process rights were not violated by the admission of the evidence. The basis of our conclusion was that the witness was not asked to make an identification and the encounter was not prearranged. Similarly, in this case, Weeks was not asked to identify the

person responsible for the April 10, 1981 robbery, but rather was asked if any of the three individuals opened a safety deposit box. Additionally, there was no evidence that the identification was prearranged. One of the Waterbury detectives testified that he had no knowledge of the April 10, 1981 robbery. Under these circumstances, the court was correct in concluding that the identification was not impermissively suggestive.

Even if we were to find that the identification procedure was impermissively suggestive, Weeks' identification could nevertheless be admissible at trial. The focus of this next step of inquiry is whether the identification was reliable because reliability is the "linchpin" in determining the admissiblity of identification evidence. *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). "[I]n determining the reliability of an identification, we must consider whether under the 'totality of circumstances' the identifications were reliable." *State* v. *Theriault,* 182 Conn. 366, 373, 438 A.2d 432 (1980). This constitutional test for reliability requires the trial court to consider " 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.' *Manson* v. *Brathwaite,* supra, 114 . . . ." *State* v. *Piskorski,* 177 Conn. 677, 742, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); see also *Neil* v. *Biggers,* 409 U.S. 188, 199–200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

In applying the test to Weeks' out-of-court identification, we find sufficient evidence to conclude that the identification was reliable. Weeks' contact with the defendant lasted only one and one-half to two minutes

and she stared at his face for only fifteen seconds. Yet, our Supreme Court has held that "a good hard look will pass muster even if it occurs during a fleeting glance." *State* v. *Ledbetter,* 185 Conn. 607, 615, 441 A.2d 595 (1981). The second factor, the witness' degree of attention, significantly favors the reliability of this identification. Weeks had taken a course on loss prevention which taught her what to do in this situation. She stared directly at the defendant and forced herself to remember his face. Adding to Weeks' degree of attention is the fact that she was the victim and not a " 'mere spectator to the incident.' " *In re Juvenile Appeal (83–EF),* 190 Conn. 428, 436–37, 461 A.2d 957 (1983). Moreover, the fact that the composite drawn by the officer after hearing Weeks' description closely resembled the defendant indicates that the identification was reliable. Finally, the fact that Weeks identified the defendant without hesitation twenty-one months after the robbery, further adds to the reliability of the identification.

B

### THE LABRANCHE AND SCHENKEL IDENTIFICATIONS

We find no merit in the claim that the identification procedure used by Grabherr with LaBranche and Schenkel was impermissibly suggestive. "It has been generally recognized that the presentation of several photographs to witnesses, including that of the suspect . . . is by itself a nonsuggestive and constitutionally acceptable practice, in the absence of any unfairness or other impropriety in the conduct of the exhibit." *State* v. *Hafner,* 168 Conn. 230, 237, 362 A.2d 925, cert. denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74 (1975). In addition, we do not find merit in the defendant's claim that the identification process was impermissibly suggestive because three of the seven photographs portrayed white males with moustaches. The photographic array used in this case is distinguish-

able from a situation where the photograph of the defendant alone was emphasized. Cf. *State* v. *Small,* 1 Conn. App. 584, 474 A.2d 460 (1984). We have recognized that "[a]ny array composed of different individuals must necessarily contain certain differences." *State* v. *Vaughn,* 199 Conn. 557, 564, 508 A.2d 430 (1986).

Under the totality of the circumstances, both LaBranche's and Schenkel's identifications of the defendant were reliable. LaBranche had an unobstructed view of the defendant for five minutes. Moreover, her description matched the description by Weeks. There is a question, however, of LaBranche's inability to describe the defendant at the first trial. The defendant suggests that the witness' inability to describe the defendant at the first trial effects the admissibility of the identification. Our Supreme Court's ruling in *State* v. *Perez,* 198 Conn. 68, 75–76, 502 A.2d 368 (1985), firmly establishes that a witness' prior uncertainty goes only to the weight of the in-court subsequent identification and not to its admissibility. Thus, LaBranche's prior inability to identify the defendant affects only the weight to be given to the identification, and not its admissibility. The identification by Schenkel was similarly reliable. Schenkel observed the defendant in his car from a frontal view as she passed him. The description Schenkel reported to the police matched that given by Weeks and LaBranche. The evidence clearly demonstrates that there was no error in the trial court's ruling that the photographic array was not impermissively suggestive.

There is no error.

In this opinion the other judges concurred.