STATE OF CONNECTICUT *v.* EARL ANDERSON
(7111)

DALY, NORCOTT and FOTI, Js.

Argued October 18—decision released November 28, 1989

*Martin Zeldis,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Jacqueline J. Footman,* deputy assistant state's attorney, with whom, on the brief, was *Cathryn Krinitsky,* assistant state's attorney, for the appellee (state).

NORCOTT, J. After a jury trial, the defendant was convicted of larceny in the second degree in violation of General Statutes § 53a-123. He claims on appeal that the trial court erred (1) in refusing to suppress the out-of-court identification of the defendant, (2) in allowing a police officer to give opinion testimony concerning her experience with crime victims, and (3) in refusing to comply with the defendant's requested jury instruction concerning eyewitness identifications.

The following facts are not in dispute. At approximately 6:15 p.m. on November 23, 1986, Josephine Dod was returning to her house with her mother, daughter and grandson after a day of shopping. The family arrived at Dod's house in Windsor, and, after Dod had parked her car and walked to the trunk of the vehicle, she heard someone call to her from the street. Dod walked to the edge of her driveway to the person who had hailed her. The person, who Dod noted was a tall, slim, black male, asked for directions to Bloomfield. As Dod was giving directions, the man grabbed her shoulder bag and, after a brief struggle, ran across the street to a running car and sped away. Dod's purse, which was in the shoulder bag, contained approximately $30, several gold rings, a driver's license and an alien registration card.

From testimony at the pretrial hearing on the defendant's motion to suppress Dod's out-of-court identification of the defendant, the trial court could have reasonably concluded the following. Officer Patricia Sullivan of the Windsor police department responded within minutes of the incident, arriving at Dod's house where she found the victim in an extremely emotional state. Between 7 and 7:15 p.m., after attempting to calm down an extremely agitated Dod, Sullivan began to take her statement. Later that same evening, at approximately 11:30 p.m., Dod went to the Windsor police station to view photographs in an attempt to identify the perpetrator. Sullivan had assembled an array of seven photographs, including one of the defendant. Although she was somewhat calmer, Dod remained highly agitated and, after viewing the photographs for about two minutes, was unable to make an identification. She made arrangements to return at a later time in order to make another attempt at identifying the perpetrator.

On December 1, 1986, Dod returned to the Windsor police station. Under the supervision of Detective Alfred Galin,[1] she viewed a second photo array of nine photographs. This array consisted of the same seven photographs Dod had viewed previously plus two additional photographs. Dod immediately identified the defendant as the person who had taken her bag.

At trial, both Dod and Sullivan testified about the November 23, 1986 incident and the circumstances surrounding the two out-of-court photographic identifications. Their testimony was consistent with that given during the pretrial hearing.

## I

On appeal, the defendant first claims that the trial court erred in finding that the identification process

---

[1] When this matter came to trial, Detective Alfred Galin had retired and resided in Florida.

employed by the police was not unnecessarily suggestive. He also claims that, notwithstanding the matter of suggestiveness, the identification by Dod was wholly unreliable. The trial court concluded that it was "not at all persuaded there has been any suggestiveness in the showing of the array to the victim in this case." We agree with the trial court and find no error.

"It is well settled that in order to succeed on a motion to suppress identification evidence, the defendant must prove (1) that the identification procedures were unnecessarily suggestive; and (2) that the resulting identification was not reliable in the totality of the circumstances." *State* v. *Myers,* 193 Conn. 457, 464, 479 A.2d 199 (1984). If the defendant fails to prove the element of suggestiveness, there is no need to consider whether the identification was reliable. "Only if the procedures used to identify the accused are unnecessarily suggestive are we required to analyze the factors that determine the reliability of an identification for due process purposes. *United States* v. *Amrine,* 724 F.2d 84, 87 (8th Cir. 1983); *United States* v. *Hurt,* 476 F.2d 1164, 1168 (D.C. Cir. 1973); *State* v. *Amarillo,* 198 Conn. 285, 294, 503 A.2d 146 (1986)." *State* v. *Miller,* 202 Conn. 463, 470–71, 522 A.2d 249 (1987).

The defendant contends that the identification procedure in this case was unnecessarily suggestive because the inclusion of his photograph in the two arrays, viewed eight days apart, constitutes impermissible suggestiveness. " 'Although "we have recognized that pictorial recurrence can be suggestive in that it increased the risk of misidentification" . . . the recurrent use of a defendant's photo in successive arrays is not presumptively suggestive.' " (Citations omitted). *State* v. *Mayette,* 204 Conn. 571, 581–82, 529 A.2d 673 (1987).

The cases that analyze the issue of recurrent photographs in identification processes focus on the proce-

dural infirmity inherent when the police show the person making the identification "pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized." *Simmons* v. *United States,* 390 U.S. 377, 383, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968). Accordingly, in *State* v. *Ledbetter,* 185 Conn. 607, 613, 441 A.2d 595 (1981), our Supreme Court found that "[t]he suggestive ingredient in the photo display is the recurrence of a *single* photo, the defendant's, in two separate displays." (Emphasis added.) See also *State* v. *McKnight,* 191 Conn. 564, 572, 469 A.2d 397 (1983).

In the present case, the trial court was correct in concluding that the repetition of the exact seven photographs in the array, including the defendant's photograph, in a subsequent nine photograph array, did not constitute impermissive suggestiveness. It is clear from our review of the record that the police in no way highlighted or emphasized the defendant's photograph, nor did they in any manner verbally or demonstratively indicate to the identifying victim anything that might be construed as suggestive. Furthermore, Dod's highly agitated, emotional condition, which persisted throughout the brief first photographic array session, is strong evidence that the first attempt at identification was rendered a nullity.

It bears repeating that the recurrent use of a defendant's photograph in successive arrays is not presumptively suggestive. It is axiomatic that "[a] defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure." *State* v. *Fullwood,* 193 Conn. 238, 244, 476 A.2d 550 (1984). This the defendant has failed to do. We are not persuaded that any unnecessary suggestiveness occurred here.

The defendant further argues that because the trial court made no determination on the reliability of the identification, we should review the record to determine whether the identification was wholly unreliable. The defendant fails to cite any authority and there is no precedent to support the type of "single-inquiry" analysis he urges. *State* v. *Miller,* supra, 474. Having found that the photographic identification procedure employed was not unnecessarily suggestive, the court's inquiry properly stopped there. There was no need to consider the reliability of that procedure. Accordingly, the trial court was correct in denying the defendant's motion to suppress the out-of-court identification.[2]

## II

The defendant next contends that the trial court erred in allowing Officer Sullivan to give opinion testimony concerning the comparative reliability of crime victims' identifications. He argues that because Dod's identification was the sole issue in this case, the court's admission of the opinion testimony constitutes reversible error. We disagree.

At trial, the following exchange ensued while the prosecutor was questioning Sullivan on redirect examination:

"Q. [Prosecutor]: Now in your nine years on the police force have you had experience in investigating complaints of this nature before?

"A. Yes, I have.

"Q. Before November 23, 1986?

---

[2] Even if we were to conclude that the recurrent use of the defendant's photograph in successive arrays was suggestive, we find from our review of the entire record that the identification was clearly reliable under the "totality of the circumstances." See *Neil* v. *Biggers,* 409 U.S. 188, 190–200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

"A. Oh yes, I have.

"Q. And have you had experience in dealing with victims in a case of this nature?

"A. Yes, I have.

"Q. And have you had experience in dealing with victims who maybe are very upset or hysterical on the first confrontation or the first meeting with them?

"A. Yes, I have.

"Q. And based on that experience as a police officer does it happen sometimes that a victim is very upset and can't, cannot assist you in the investigation, but later can assist you?

"A. That happens quite often.

"[Defense counsel]: Objection, Your Honor. Irrelevant and there hasn't been a proper foundation laid."

After the state argued that Sullivan's testimony was "based on her experience as a police officer" and that the view expressed "doesn't require expert testimony," the court overruled the objection. We agree with the trial court's finding that at that point there was nothing "expert" about the quality of Sullivan's testimony. Indeed, no opinion was given at all. Sullivan's response was an observation drawn from her work as a police officer. We also cannot agree that the subject matter was irrelevant to Sullivan's testimony concerning the investigation of the crime in question here. Questions concerning the relevance of evidence are left to the discretion of the trial court and will not be disturbed unless the court has clearly abused its discretion in its resolution. *State* v. *Fritz,* 204 Conn. 156, 167–68, 527 A.2d 1157 (1987); *Vazzano* v. *Slater,* 6 Conn. App. 1, 6, 502 A.2d 440 (1986); *State* v. *Hardwick,* 1 Conn. App. 609,

616, 475 A.2d 315 (1984). We find that the court did not abuse its discretion in its ruling, and, therefore, there is no error.

The defendant also argues for the first time on appeal that the trial court erred in allowing a second redirect by the state. During that questioning, the following exchange occurred:

"Q. [Prosecutor]: I have another question. Based on your experience as a police officer and a person who dealt with a number of victims who say have [sic] to be complainants in matters of the nature, would you say that a person's memory is better the day of the event or better several days later when they have had time to calm down?

"A. Several days later, their memory is usually better."

The defendant offered no objection to this exchange.

Generally, evidentiary claims will not be reviewed on appeal where counsel did not properly preserve a claim by objection and exception. See *State* v. *Lizotte,* 200 Conn. 734, 742A, 517 A.2d 610 (1986); see also *State* v. *Rothenberg,* 195 Conn. 253, 262–63, 487 A.2d 545 (1985). Having failed to preserve this issue for appeal, the defendant, in his reply brief, asks that he be afforded *Evans* review of this claim. See *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

We must ask a series of questions in order to determine whether *Evans* review is warranted. We first ask whether the defendant has raised an issue which, " 'by its terms, implicates a fundamental constitutional right? This question looks solely to whether the *label* which the defendant places on the claim is constitutional in nature.' " *State* v. *Huff,* 10 Conn. App. 330, 334, 523 A.2d 906 (1987). Here, the defendant claims that his federal and state constitutional rights to due process

and a fair trial were violated by the admission of this testimony. The defendant has, therefore, passed the first step of *Evans* with this constitutional label.

The second question is whether the defendant's claim is adequately supported by the record. " 'This question requires that we review the record in a *limited* way and determine, on the basis of that limited review, whether the defendant's claim is truly of constitutional proportions or is simply characterized as such by the defendant.' " (Emphasis in original.) Id.

Our limited review reveals that the defendant's claim is not of constitutional magnitude. "Only the most exceptional circumstances will save a claim from the fatal consequences of counsel's failure to make a timely exception. *State* v. *Evans,* [supra]." *State* v. *Chauvin,* 8 Conn. App. 307, 310, 512 A.2d 969 (1986). The defendant here has failed to demonstrate that this claim is so exceptional as to merit review absent any proper preservation at trial.[3]

---

[3] We note that even if the defendant had properly preserved this claim for review, we would find no reversible error. The defendant, on recross, elicited the following from the witness.

"Q. [Defense Counsel]: Officer, in your experience and training would a person's memory be better the day of an event, be better the day the event occurred or fifteen months later?

"A: Oh, given those correlations, I would have to say closer to the day that the event occurred than fifteen months later."

It was after this line of questioning that the state also asked for the officer's opinion. In essence, the prosecutor repeated the same question to Officer Sullivan as had the defendant's counsel.

While we cannot unequivocally say that the type of testimony first elicited from Sullivan by the defendant's counsel on recross and then repeated, in effect, by the state during its second redirect is not the type of opinion testimony that our appellate courts have condemned; see *State* v. *Vilalastra,* 207 Conn. 35, 41, 540 A.2d 42 (1988); see also *State* v. *Lamme,* 19 Conn. App. 594, 603–604, 563 A.2d 1372 (1989); it is clear from the record that defense counsel invited the responses. The defendant cannot rely upon the admission of evidence which he himself introduced as a basis for a reversal of his conviction. *State* v. *Smith,* 212 Conn. 593, 610, 563 A.2d 671 (1989); *State* v. *Kinsey,* 173 Conn. 344, 349, 377 A.2d 1095 (1977); *State* v. *Vilhotti,* 11 Conn. App. 709, 713, 529 A.2d 235 (1987).

The rule concerning admissibility of the testimony of this witness is a rule of evidence and not of constitutional law. See *State* v. *Smith,* 198 Conn. 147, 156, 502 A.2d 874 (1985). Because the defendant has failed to pass the second step required for *Evans* review, we decline to consider this claim any further.

### III

The defendant's final claim is that the trial court erred in its instructions to the jury on eyewitness identification by refusing to include in its charge an instruction on identification based on *United States* v. *Telfaire,* 469 F.2d 552 (D.C. Cir. 1972), and an instruction concerning photographic identification based on *Simmons* v. *United States,* supra. The defendant had requested both instructions at trial.[4]

---

[4] The defendant's requested instructions concerning eyewitness identification read as follows:

"6. Are you satisfied that the identification made by the witness subsequent to the offense was the product of her own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made. If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to her for identification, you should scrutinize the identification with great care.

"7. It must be recognized that the use of photographs may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in her memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent line-up or courtroom identification. This is not to say that such testimony concerning the use of photographs is to be disregarded by you, but I instruct you to appraise carefully such testimony balanced by the testimony revealed during cross-examination of such witnesses."

"The *Telfaire* instruction tells the jury to consider in appraising the identification testimony of a witness the adequacy of his opportunity and his capacity to observe the offender; the length of time available for the witness to observe the offender; the proximity of the witness to the offender; whether the witness had seen or known this person in the past; whether the identification was a product of the witness' own recollection; and the credibility of the witness. *United States* v. *Telfaire,* [supra]." *State* v. *Davis,* 198 Conn. 680, 685, 504 A.2d 1372 (1986). The *Simmons* instruction requested by the defendant cautions the jury about problems that arise when photographs are used to obtain an identification. Specifically, the defendant's requested instruction includes a caution to the jury concerning police use of an improper identification procedure.

With respect to the defendant's *Telfaire* request, we note that there is no constitutional right to an instruction on the fallibility of eyewitness identifications. *United States* v. *Roundtree,* 527 F.2d 16, 19 (8th Cir. 1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1133, 47 L. Ed. 2d 332 (1976); *State* v. *Hardison,* 16 Conn. App. 142, 146, 546 A.2d 968 (1988). " 'Although such an instruction may be given in an appropriate case; see *State* v. *Harden,* 175 Conn. 315, 322, 398 A.2d 1169 (1978); it is not reversible error for a trial court to refuse to give a *Telfaire* instruction where the conviction of the defendant did not turn upon the testimony of eyewitnesses who were uncertain, unclear or inconsistent. *State* v. *Davis* [supra 685].' " *State* v. *Hardison,* supra, quoting *State* v. *Elliott,* 8 Conn. App. 566, 573, 513 A.2d 1285, cert. denied, 201 Conn. 813, 517 A.2d 630 (1986). " 'The ultimate test of a court's instructions is whether, taken as a whole, they fairly and adequately present the case to a jury in such a way that injustice is not done to either party under the established rules

of law.' *State* v. *Harden,* [supra]." *State* v. *McKnight,* 191 Conn. 564, 583, 469 A.2d 397 (1983).

We cannot conclude from our review that the eyewitness, Dod, was uncertain, unclear or inconsistent in her identification of the defendant. Notwithstanding her highly emotional condition immediately after the incident and during the first brief photographic array, Dod unhesitatingly and confidently identified the defendant during the second array and in court. Even though her initial description of her assailant was general, on review we cannot characterize that description as unclear or inconsistent.

Concerning the trial court's instructions, we note that the court instructed the jury, inter alia, that: "the reliability of the identification witness [was] of paramount importance"; they should thoroughly scrutinize such testimony and consider "all the facts and circumstances which existed at the time of the observation of the perpetrator by the witness"; in addition to weighing such factors as the length of time the witness had to observe the assailant, lighting conditions, and potential distractions to a witness' attention, the jury should consider the emotional condition of the witness as well as her general powers of observation; they should take into account "any occasions in which the witness failed to make an identification. . . . or made an identification which was inconsistent with her identification at trial"; and, finally, they must be "satisfied beyond a reasonable doubt of the identity of the defendant as the one who committed this crime" or find the defendant not guilty.

We conclude that the trial court's instructions "adequately covered the dangers of misidentification." See *State* v. *McKnight,* supra. It was, therefore, not error for the trial court to refuse to charge the jury in the language identical to that in the defendant's request.

See *State* v. *Harrell,* 199 Conn. 255, 269, 506 A.2d 1041 (1986). Because we have found that there was no unnecessary suggestiveness in the photographic arrays, the defendant's claim that the trial court erred in failing to give the requested charge based on *Simmons* is without merit.

There is no error.

In this opinion the other judges concurred.