STATE OF CONNECTICUT *v.* STANFORD L. FRYE
(9099)

O'CONNELL, FOTI and LANDAU, Js.

Argued September 19, 1991—decision released January 28, 1992

*Neal Cone,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen Sedensky III,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, Stanford Frye, appeals from a judgment of conviction, rendered after a jury trial, of possession of a narcotic substance with intent to sell by a person who is not drug dependent in viola-

tion of General Statutes § 21a-278 (b). On appeal the defendant claims that (1) there was an inadequate canvass of his waiver of his right to counsel, and (2) the trial court improperly refused to give the jury a limiting instruction regarding evidence of his criminal record. We disagree.

The jury could reasonably have found the following facts. On May 1, 1989, at approximately 6:15 p.m., Bridgeport police officers Victor Diaz and Peter Gelozin saw the defendant and a second male, Marvin Needham, attempting to flag down passing cars in front of buildings six and seven in Father Panik Village. The officers further observed the defendant pass the contents of a plastic bag to Needham. As the officers approached, the two males began to walk away in different directions. The officers then saw the defendant drop a plastic bag while he was attempting to leave the area. The bag contained what was later identified as twenty-nine vials of crack cocaine. The officers apprehended the defendant a few feet from the discarded bag. No drugs were found on his person.

Immediately after jury selection had been completed, the defendant's court-appointed trial counsel sought to withdraw from the case, asserting that the defendant had indicated in a note[1] that he was dissatisfied with his attorney's "preparation and knowledge about the case and the investigation that was done," and that the defendant would like personally to cross-examine all witnesses himself. The court then attempted to clarify the nature of the defendant's request with respect to the right to cross-examine the witnesses. The following colloquy occurred.

"The Court: I'm not certain what you mean or what your client means by he wants the right to cross-

_____
[1] The note was never marked for identification nor was it entered into evidence.

examine witnesses. I don't understand what he means that he wants to totally take over the defense of this case himself and act as his own counsel from start to finish or he wants some rights in addition to those he normally would have to be represented by counsel by joining in the cross-examination. So—

"The Defendant: Yes, Your Honor. My position concerning my trial at this point as it was in the beginning that I would like to represent myself concerning this matter and exercise myself to examine witnesses, cross-examine witnesses. I would, however, like counsel to advise and consult, because I do plan on taking the stand and I would need counsel to question me if I do take the stand." The court then explained to the defendant that he had a right to waive his constitutional right to counsel knowingly and intelligently and to represent himself, and began to question the defendant to determine whether he did in fact want to waive his right to counsel.

At the conclusion of the canvass, the court requested that the defendant confer with counsel in an attempt to resolve the problems the defendant believed existed regarding his representation. The defendant was instructed to take as much time as he needed. Upon returning to the courtroom, defense counsel indicated that he and the defendant had reached an accord. They decided that the defendant would cross-examine the police officers, and the determination as to who would examine or cross-examine the remaining witnesses would be made at the time each witness was to testify. The decision as to who would present final argument also would be made during the trial.[2]

---

[2] The following colloquy occurred: "The Court: Mr. Abbamonte, I understand that you and Mr. Frye have reached an accord as to how you wish to proceed. That Mr. Frye intends to act as his own counsel.

"Defense Counsel: Yes, Your Honor. He wishes to act as his own counsel for purposes at least of cross-examining the police officers and we've

The defendant first claims that the trial court's inquiry concerning the waiver of his right to counsel was inadequate. We conclude that the court never actually canvassed the defendant concerning a waiver of counsel because the defendant never indicated to the court that it was his desire to waive his right to counsel.

We begin our analysis by noting that the defendant never did in fact waive his right to counsel nor was he denied the effective assistance of counsel. He made no unequivocal request to represent himself without the assistance of counsel nor did he request that his present counsel be replaced. His initial colloquy with the trial court can most accurately be construed as a request to act as cocounsel. This is not a request to proceed pro se. *Raulerson* v. *Wainwright,* 732 F.2d 803, 808 (11th Cir.), cert. denied, 469 U.S. 966, 105 S. Ct. 366, 83 L. Ed. 2d 302 (1984); *United States* v. *Bennett,* 539 F.2d 45, 49 (10th Cir.), cert. denied, 429 U.S. 925, 97 S. Ct. 327, 50 L. Ed. 2d 293 (1976). The defendant in effect requested what has been recognized as "hybrid representation."[3]

" '[U]nder such a "hybrid representation" arrangement, both [the defendant] and his attorney would conduct portions of his trial, while [the defendant] retained ultimate control over defense strategy.' Accord 2 LaFave & Israel, Criminal Procedure (1984) § 11.5 (f); comment, 'The Right to Appear Pro Se: Developments

---

agreed on that; as to other witnesses, we will decide at that time who will handle it. Also as to final argument, we will decide who will handle that. I have just explained to him what the court indicated to me, that only one of us can do one thing. We both can't handle the argument, we both can't cross-examine the same witness, but we can take turns. So I think you've agreed to that, Mr. Frye?

"The Defendant: Yes, sir."

[3] The defendant has no right to "hybrid representation" under either the state or federal constitution. *State* v. *Gethers,* 197 Conn. 369, 382–94, 497 A.2d 408 (1985). It is wholly within the trial court's discretion to permit such representation. Id.

in the Law,' 59 Neb. L. Rev. 135, 156–57 (1980); note, 'The Accused as Co-Counsel: The Case for the Hybrid Defense,' 12 Val. U.L. Rev. 329, 339 (1978) . . . . Theoretically, hybrid representation can be considered as the ultimate product of a criminal defendant's 'partial waiver' of both his *Faretta* [v. *California,* 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1985)] right to self-representation and his right to assistance of counsel. 2 LaFave & Israel, supra." *State* v. *Gethers,* 197 Conn. 369, 383, 497 A.2d 408 (1985). The defendant is permitted to exercise greater control over an increased number of trial proceedings than that to which he is constitutionally entitled[4] while being permitted to retain the services of one schooled in trial practice.

A review of the record reveals that the defendant's colloquy with the trial court was a request for "hybrid representation," rather than a waiver of his right to counsel. The division of labor to which the defendant and his counsel agreed during the out-of-court conference, and the actual division of labor during the course of the trial, lead us to this conclusion. The defendant and his court-appointed counsel shared equally the responsibility of conducting the defendant's trial. The defendant cross-examined Officers Diaz and Gelozin, conducted the direct examination of Officers Diaz, Gelozin and Convertito, and presented final argument to the jury. Trial counsel conducted the jury voir dire, the cross-examination of the state toxicologist, the direct examination of the defendant, the motion for judgment of acquittal, and the exceptions to the jury charge. The defendant's initial colloquy with the court

---

[4] A criminal defendant has the ultimate authority to make decisions concerning inherently personal rights of fundamental importance such as whether to plead guilty, waive a jury trial, testify in his or her own behalf, or take an appeal. *Jones* v. *Barnes,* 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983); *Wainright* v. *Sykes,* 433 U.S. 72, 93 n.1, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).

indicates that it was his intention from the outset that his attorney be more than merely an advisor and consultant. The defendant expressly stated that he wanted court-appointed counsel to conduct at least a portion of the trial, his direct examination.

We conclude that there was neither a waiver of the right to counsel nor any indication that the defendant was deprived of his constitutional right to counsel. Thus, we need not decide whether the trial court's canvass of the defendant was adequate to ensure a knowing, intelligent and voluntary waiver of his right to counsel as required by the constitution.

The defendant next claims that the trial court denied him his constitutional right to a fair trial and due process of law by improperly refusing to give a limiting instruction in its charge to the jury concerning the use of the defendant's criminal record. He argues that this issue is reviewable on the basis of an exception taken immediately after the jury charge or, in the alternative, under *State* v. *Evans,* 165 Conn. 61, 70, 372 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We disagree with the defendant's second claim.

Practice Book § 852 sets forth the prerequisites for reviewing requests to charge and exceptions. The Practice Book provides that the court "shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge *or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection.*" (Emphasis added.) Practice Book § 852. There was no written request to charge made in this case addressing how the jury could use the defendant's criminal record. The defendant's attorney, however,

took an exception to the trial court's charge and requested such an instruction immediately after the court's charge to the jury. Specifically, he took exception to three portions of the trial court's charge, the second of which addressed the absence of any mention by the court as to how the jury was to consider the defendant's criminal record.[5] The trial court denied the request. The defendants' attorney again took an exception. This exception to the trial court's charge did not properly preserve this claim for appellate review.[6] Practice Book § 852 applies only where the trial court has misstated the applicable law or where there is ambiguity in the jury charge. It does not apply where there is a failure to instruct on something that was never requested in writing prior to the jury instructions. It cannot be used to cure a failure to file a written request to charge.[7] Additionally, the defendant cannot prevail under *State* v. *Evans,* supra, and *State* v. *Golding,* supra, because he has failed to satisfy the third requirement of *Golding,* which requires that the defendant demon-

---

[5] The exception was phrased as follows: "[Defense Counsel]: Secondly, this doesn't appear in the charge, but when—and I wasn't aware of it obviously until the defendant gave his final argument, but he indicated to the jury that he had a prior criminal record. This was the first time it was brought out. I would ask the court to instruct the jury as to how they are to consider that particular thing that it goes to his credibility and not to the fact that he's guilty or innocent of the charge. I would—I don't have the exact wording, but I'm sure Your Honor knows what it is. I would request that particular portion of the charge be given to the jury."

[6] We note that even if the defendant had properly preserved this claim for review, we would find no reversible error. The defendant cannot rely on an admission which he himself introduced as a basis for reversal of his conviction. *State* v. *Smith,* 212 Conn. 593, 610, 563 A.2d 671 (1989); *State* v. *Kinsey,* 173 Conn. 344, 349, 377 A.2d 1095 (1977); *State* v. *Anderson,* 20 Conn. App. 271, 279 n.3, 566 A.2d 436 (1989), cert. denied, 213 Conn. 813, 569 A.2d 549 (1990); *State* v. *Vilhotti,* 11 Conn. App. 709, 713, 529 A.2d 235 (1987).

[7] Were we to conclude that this oral request satisfied Practice Book § 852, we would render meaningless the requirement that trial counsel file a written request to charge prior to the trial court's instructions to the jury.

strate that a "constitutional violation clearly exists and clearly deprived [him] of a fair trial." *State* v. *Golding,* supra.

Prior to the presentation of the defendant's case-in-chief, the defendant's attorney addressed a motion in limine regarding the inadmissibility of the defendant's prior convictions of robbery and larceny. The trial court ruled that it would allow the introduction of the prior offenses by name, and it noted the exception by the defendant's attorney. The prosecution, however, made no mention of either offense. The defendant made the first mention of his criminal record in his own final argument to the jury.

The cornerstone of the defendant's argument is that there is great temptation for the jury to consider evidence of prior misconduct as substantive evidence of guilt rather than merely as a means of impeaching the credibility of a witness. This tendency, the defendant argues, requires that the court give a limiting instruction to the jury regardless of how the information came to the jury's attention. We do not accept this argument.

In closing argument, the defendant commented as follows. "Again, I'm not denying that this incident happened. It's a fact that it happened. I'm not trying to paint you a picture that I have always been a businessman. You know, unlicensed barber as an upright citizen in society. I don't know why the prosecutor didn't bring my record up. I do have a record, a previous criminal record that establishes me as a person that has broken the law before. I've made a lot of mistakes in my life and I'm very regretful about them. So I'm not standing before you to try to paint a picture that I'm an angel or someone that doesn't make mistakes."

The defendant's criminal record was not mentioned during the evidentiary phase of the trial when the

defendant was testifying as a witness, but rather during the closing argument by the defendant himself.

Although the defendant may have commented on facts not in evidence, the proper question before us is not whether the defendant's comments were proper or improper but rather whether the trial court, in refusing to give a limiting instruction, so far exceeded or abused its discretion as to warrant our granting a new trial. "The trial court is in a better position to determine the propriety of the remarks of counsel and whether or not they are harmful." *State* v. *Glenn,* 194 Conn. 483, 493, 481 A.2d 781 (1984). Our inquiry is to determine whether the defendant was deprived of his constitutional right to a fair trial by the trial court's failure to instruct the jury as requested. Id., 492.

"In determining whether the defendant was denied a fair trial we must view the . . . comments in the context of the entire trial." *State* v. *Williams,* 204 Conn. 523, 538, 529 A.2d 653 (1987). The burden is on the defendant to prove that the remarks deprived him "of the opportunity for a fair trial and [that] the entire proceedings were tainted." *State* v. *Doehrer,* 200 Conn. 642, 653–54, 513 A.2d 58 (1986); *State* v. *Hamel,* 14 Conn. App. 6, 9, 539 A.2d 603 (1988). We must determine whether the defendant's remarks during closing arguments and the trial courts refusal to instruct the jury as to the application of the defendant's prior criminal record, in light of all of the circumstances, including the trial court's charge as a whole, were so egregious and so damaging to the defendant that they deprived him of a fair trial. *State* v. *Couture,* 194 Conn. 530, 562, 482 A.2d 300, cert. denied, 469 U.S. 1192, 105 S. Ct 967, 83 L. Ed. 2d 971 (1985). Applying the established rules to the case before us, we conclude that the defendant falls short of demonstrating an entitlement to a new trial. See *State* v. *Falcone,* 191 Conn. 12, 23, 463 A.2d 558 (1983).

A review of the closing arguments reveals that the defendant's statement has taken on an importance on appeal that it does not appear to have had at trial. The defendant's comments, taken in the context of the entire trial, do not rise to the level of a denial of a fair trial. The remarks were a very small portion of the defendant's closing argument; see State v. Magnotti, 198 Conn. 209, 220, 502 A.2d 404 (1985); intended to appeal to the jury and not to call attention to these specific acts. Because the defendant has failed to demonstrate that his remarks deprived him of the opportunity for a fair trial and that the entire proceedings were tainted, we conclude that he was not denied a fair trial. Therefore, no limiting instruction was required.

The judgment is affirmed.

In this opinion the other judges concurred.