STATE OF CONNECTICUT *v.* JO ANN BETTINI
(4361)

DUPONT, C. J., BORDEN and DALY, Js.

Argued March 5—decision released August 4, 1987

*Joseph F. Keefe,* with whom, on the brief, were *Daniel D. Mencuccini* and *David A. Moraghan,* for the appellant (defendant).

*James G. Clark,* assistant state's attorney, with whom, on the brief, were *Dennis Santore,* state's attorney, and *Linda L. Yoder,* special attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of larceny in the first degree, by embezzlement, in violation of General Statutes § 53a-122 (a) (2).[1] She claims that the trial

---

[1] General Statutes (Rev. to 1981) § 53a-122 (a) (2) provides: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and: . . . (2) the value of the property or service exceeds two thousand dollars."

General Statutes § 53a-119 (1) provides: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to: (1) Embezzlement. A person commits embezzlement when he wrongfully appropriates to himself or to another property of another in his care or custody."

court erred (1) in denying her motion for judgment of acquittal, (2) in denying the defendant's request to charge regarding accessorial liability, and (3) in denying the defendant's motion for discovery of alleged exculpatory evidence. We find no error.

The jury could reasonably have found the following facts: During the period from July, 1982, through July, 1983, the Register Citizen Newspaper sustained financial losses from its business department in the approximate amount of $17,000 to $24,000. The funds were taken in the following manner. On a daily basis, checks were received in the mail from customers for display advertising. The checks were distributed to the person responsible for preparing the daily cash sheet and bank deposit. This person entered receipt of the payment on the daily cash sheet which contained the customer's identity, the gross amount owed or paid by the customer, an allowable discount, and a net amount owed or paid after deducting the allowed discount. On at least ninety-five occasions, the cash sheets were altered. While the gross amount figure accurately reflected the total value of the checks received on any given day, the individual discount figure would be inflated beyond that to which the customer was entitled. Consequently, the net amount figure was reduced.

The same person who prepared the daily cash sheets also prepared a deposit of the day's receipts. Each deposit consisted of the checks received and all the cash contained in the department's cash register on a given day. The cash came from different sources, including payments received through walk-ins or from the newspaper's vending machines. The checks were entered on the deposit at face value and were not altered. On the days when alterations occurred, that portion of the deposit comprising the total amount of checks was in excess of the net figure on the cash sheets. This discrepancy was attributable to the inflated discount fig-

ure which had been recorded. This lower net figure coupled with the deposit of the vendor's checks at face value created an available cash surplus in the register at the end of each day. This surplus was equal to the increase caused by the inflated amount of the discount on the cash sheets. For the bank deposit to correspond to the amount entered on the daily cash sheets, the thief took the excess amount in cash from the register.

I

The defendant first claims that the trial court erred in denying her motion for judgment of acquittal on the charge of larceny by embezzlement. She claims essentially that the state failed to prove two elements of the crime: her identity; and wrongful appropriation. We disagree.

"The two part standard for gauging the sufficiency of evidence in a criminal case is well established. 'We first view all of the evidence in the light most favorable to the verdict. We then determine whether a jury could have reasonably concluded, from that evidence and all the reasonable inferences which it yields, that the defendant was guilty beyond a reasonable doubt.' *State* v. *Parent,* 8 Conn. App. 469, 472–73, 513 A.2d 725 (1986). 'The jury may base an inference on facts it finds as a result of other inferences.' *State* v. *Little,* 194 Conn. 665, 673, 485 A.2d 913 (1984). Proof beyond a reasonable doubt does not mean proof beyond a possible doubt. Id., 672." *State* v. *Liscio,* 9 Conn. App. 121, 125, 516 A.2d 1366 (1986), cert. denied, 202 Conn. 803, 519 A.2d 1208 (1987).

Under General Statutes § 53a-119 (1), "[a] person commits embezzlement when he *wrongfully appropriates* to himself or to another property of another in his care or custody." (Emphasis added.) General Statutes § 53a-118 (a) (4) provides further: "To 'appropriate' property of another to oneself or a third person means

(A) to exercise control over it . . . permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit . . . ."

The crime of embezzlement is distinguishable from other types of larceny because the property must already be in the embezzler's lawful possession when it is misappropriated. 2 W. LaFave & A. Scott, Criminal Law § 8.6 (b). "The crime of embezzlement is consummated where, as here, the defendant, by virtue of his agency or other confidential relationship, has been entrusted with the property of another and wrongfully converts it to his own use." *State* v. *Lizzi,* 199 Conn. 462, 467, 508 A.2d 16 (1986). Contrary to the defendant's suggestion, there is no requirement that anyone actually see the defendant appropriate money. Nor could there be, since the nature of the crime is such that the property appropriated is already lawfully in the thief's possession. Also, there is no requirement, as the defendant suggests, for the state to prove that the defendant's life style evinced unexplained wealth.

The state presented sufficient evidence to allow the jury reasonably to conclude that the defendant wrongfully appropriated to herself money in her care which belonged to the newspaper. That evidence is as follows.

Over the course of a year, $17,000 to $24,000 was appropriated by a complex method involving ninety-five alterations of the daily cash sheets. The thief had to have access to the daily cash sheets including the checks received in the mail, as well as the bank deposits and funds in the cash register. This access must have been more than casual or occasional in light of the number of thefts over the year.

Only employees of the accounting office were permitted to make entries on the cash sheets. The employees, therefore, who theoretically had access to the

records were Michael Orsi, the business office manager; Cindy Cifaldi, the bookkeeper for the department prior to February, 1983; Renee Beecher, the receptionist responsible for answering the phone and sorting the mail; Claudia Derwitsch, the computer operator, who is also the defendant's sister and was a codefendant at trial;[2] and the defendant. Prior to February, 1983, the defendant was a "floater" who had occasion to fill in for the bookkeeper, Cifaldi, when she was absent. After that date, the defendant assumed the position of bookkeeper upon Cifaldi's transfer to the circulation department. After February, 1983, the frequency of the thefts increased dramatically. Prior to that date and while Cifaldi was the bookkeeper, she noticed errors on the cash sheets on a number of occasions when the defendant substituted for her, including the entry of inflated discount amounts. Cifaldi testified that she had told another employee that she thought the defendant was taking money from the newspaper, although she did not report it to her superiors.

The state also introduced evidence from personnel records which revealed that Orsi, Cifaldi and Beecher were absent from work or on vacation on at least one of the days when the altered entries and accompanying thefts took place. Additionally, when the defendant or her sister were on vacation, no thefts took place. Finally, a handwriting expert testified that he had examined samples of the false entries and compared them to the handwriting samples of Beecher, Cifaldi, Orsi, the defendant and her sister. The expert found no association between the handwriting of the first three individuals and the false entries, but did find similarities between the handwriting of the defendant and her sister and some of the entries. From the cumu-

---

[2] Claudia Derwitsch was also charged with first degree larceny in violation of General Statutes § 53a-122 (a) (2). She was acquitted, after a joint trial with the defendant, of that charge.

lative effect of this evidence, the jury could reasonably have concluded that the defendant wrongfully appropriated the funds.

## II

The defendant next claims that the trial court erred in failing to instruct the jury, as requested, that mere association or knowledge of an illegal activity or mere presence at the scene of a crime is not sufficient to convict a person of embezzlement.[3] We disagree.

Practice Book § 852, at the time of the defendant's trial, provided: "Requests shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, *and the facts supported by the evidence* to which the proposition would apply." (Emphasis added.) In her request to charge; see footnote 2, supra; the defendant has failed to comply with the rules of practice since she did not state the facts to which the proposition of law would apply. In the absence of compliance with the rules of practice, the trial court is entitled to deny a request to charge. See *State* v. *Thurman*, 10 Conn. App. 302, 323, 523 A.2d 891 (1987).

Under the facts of this case, the defendant's failure to comply with the rules of practice is understandable since there are no such facts that she could assert in support of the requested instruction. The requested charge is appropriate in cases where the state relies on a theory of accessorial liability. See, e.g., *State* v. *Teart*, 170 Conn. 332, 334–36, 365 A.2d 1200 (1976).

---

[3] The defendant's request to charge was as follows: "You must keep in mind at all times that mere association with others, or mere knowledge of illegal activity is not sufficient to permit you to convict the defendant of the crimes with which she is charged. I instruct you further that 'mere presence at [the] scene of a crime is not evidence of guilt.' *United States* v. *Francomano*, 554 F.2d 483, 486 (1st Cir. 1977)."

The case cited by the defendant as authority for the proposition of law involved accomplice liability. See *United States* v. *Francomano,* 554 F.2d 483, 486 (1st Cir. 1977). The evidence adduced at the trial in this case did not support a theory of accessorial liability. The evidence established more than passive involvement of the defendant in the criminal activity; it established her liability as a principal wrongdoer. It was not error for the trial court to refuse to charge the jury on a theory of law which was not supported by the evidence. *State* v. *Gasparro,* 194 Conn. 96, 113, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985).

## III

The defendant's final claim is that the trial court erred in denying her motion for discovery which sought, inter alia, the names of any persons accused of larceny by the newspaper over the past five years, details about any such incident, information about criminal or civil proceedings arising from the charges, and information regarding unemployment claims filed by such persons. This request included information which "now [was] known to the prosecuting authority, *or which may through due diligence be learned from the investigating officers or the witnesses in the case.*" (Emphasis added.) The defendant makes the unsupported assertion that if the request had been granted, she would have received information that "[t]he very same act[s] of theft and embezzlement . . . had occurred on a number of occasions in the past," and that other employees of the newspaper had been accused of these thefts. Relying on *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and *State* v. *Cohane,* 193 Conn. 474, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984), the defendant claims that the failure to grant the request denied her access to exculpatory evidence which would have assisted her

in the cross-examination of the state's key witnesses, in violation of her constitutional right to a fair trial. We disagree.

There is absolutely no basis for concluding that the state possessed evidence of prior thefts at the newspaper. Our Supreme Court has stated that "[i]n order to establish a violation of *Brady* and its progeny, the defendant must demonstrate the prosecution *had possession* of material information favorable to the accused . . . ." (Emphasis added; footnote omitted.) *State* v. *Falcone,* 191 Conn. 12, 17, 463 A.2d 558 (1983); see also General Statutes § 54-86c. We reject the defendant's claim that the state in this case was under an obligation to conduct an independent investigation of the newspaper's records in order to become apprised of such information.

Furthermore, the defendant took advantage of the opportunity to cross-examine some of the state's witnesses on the matter of prior thefts at the newspaper. That cross-examination revealed that on occasion insignificant amounts of cash had been unaccounted for, and that in 1981 there was a single theft of a cash deposit of $16,000 dollars from the circulation department. There was no evidence adduced, however, which in any manner supports the defendant's claim that "the very same act[s] of theft and embezzlement" had occurred before.

There is no error.

In this opinion the other judges concurred.