STATE OF CONNECTICUT *v.* JEFFREY DANIELS
(5119)

BORDEN, BIELUCH and O'CONNELL, Js.

Argued November 10—decision released December 29, 1987

*Edward J. Gallagher,* for the appellant (defendant).

*Christopher Malany,* deputy assistant state's attorney, with whom, on the brief, were *Brian Cotter,* assistant state's attorney, and *Alice Osedach,* legal intern, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101, assault of a victim sixty years of age or older in the second degree in violation of General Statutes § 53a-60b, and robbery in the first degree in violation of General Statutes § 53a-134. The defendant claims that the trial court erred (1) in not suppressing the out-of-court and in-court identifications of him, (2) in allowing the case to go to the jury and in failing to set aside the verdict because of the alleged defects in that identification evidence, (3) in admitting certain hearsay testimony, (4) in failing to set aside the verdict as inconsistent, and (5) in not granting the defendant's motion for a new trial because certain forensic reports were not made known to him until after trial.[1] We find no error.

The jury could reasonably have found the following facts. On February 28, 1985, the defendant entered the home of Harriet Mignerey, a ninety-three year old woman, without authorization, and assaulted her in the bathroom of the home. While the assault of Mignerey was occurring, her niece, Lynne Paris, entered the home. The defendant then took approximately $22 from Paris' purse and fled from the house. He was arrested the next day after Paris, accompanied by police officers, identified him at a shopping center.

I

In his first two claims of error, the defendant challenges the denial of his motion to suppress the out-of-

---

[1] In oral argument before this court, the defendant withdrew a sixth claim of error, regarding the denial of his petition for new trial. We therefore do not consider this issue.

court and in-court identifications of him by Paris. These claims are without merit.

The trial court held an evidentiary hearing regarding the identifications and specifically found that none of them was the result of an impermissibly suggestive procedure, and that they were reliable. See, e.g., *State* v. *Vilhotti,* 11 Conn. App. 709, 713–18, 529 A.2d 235 (1987). It would serve no useful purpose to recite those findings here. We have fully reviewed the record, and we conclude that those findings are amply supported by the evidence. *State* v. *Mitchell,* 204 Conn. 187, 203, 527 A.2d 1168, cert. denied, U.S. , 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987).

## II

The defendant next claims that the court erred in permitting Craig Foster, a physician, to testify to certain statements made to him by Mignerey because they were hearsay. We disagree.

Foster testified that he treated Mignerey for her injuries on February 28, 1985, and that Mignerey was alert and answered his questions appropriately. In the course of treatment, Foster asked Mignerey what caused her injuries. Foster testified, over the defendant's objection, that Mignerey stated "that she had been surprised by an intruder in her house. The intruder hit her and knocked her down and she had severe pain from that point on."

Foster's testimony regarding Mignerey's statements was within the well recognized exception to the hearsay rule pertaining to statements made to a physician as to the nature of an injury for the purpose of receiving medical advice and treatment. *Brown* v. *Blauvelt,* 152 Conn. 272, 274, 205 A.2d 773 (1964); *Wilson* v. *Granby,* 47 Conn. 59, 76 (1879); C. Tait & J. LaPlante, Connecticut Evidence § 11.12 (c) (1976); B. Holden &

J. Daly, Connecticut Evidence § 100 (c) (1966); see Fed. R. Evid. 803 (4) (providing an exception for hearsay "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment"); see also *United States* v. *Iron Shell,* 633 F.2d 77, 82–85 (8th Cir. 1980). The defendant argues that the exception does not apply in this case because Frost was not also asked for his opinion regarding Mignerey's condition. We know of no authority or reason, nor has the defendant offered any, for such a precondition to the medical treatment exception to the hearsay rule.

## III

The defendant's next claim requires little discussion. The jury found the defendant guilty of the crimes of burglary in the first degree, robbery in the first degree, and assault of a victim sixty years of age or older in the second degree, while it acquitted him of the charges of assault in the third degree and sexual assault in the third degree. The latter crimes were alleged to have been perpetrated against Paris. The defendant claims that the verdict was inconsistent. This claim is without merit. *State* v. *Dumlao,* 3 Conn. App. 607, 625, 491 A.2d 404 (1985) (consistency in verdicts not necessary).

## IV

The defendant's final claim is that the court erred in not granting his motion for a new trial based upon the state's failure to make two forensic reports available to him prior to trial. We disagree.

The police seized two sets of footwear from the defendant: boots which he was wearing when he was arrested on the day after the crimes; and sneakers sub-

sequently seized from his residence pursuant to a search warrant. The two reports in question disclosed that the sneakers seized from the defendant's residence did not have a footwear pattern consistent with a footwear pattern found on the floor of Mignerey's bathroom. The state, however, did not compare the boots he was wearing when he was arrested with the footwear pattern left at the crime scene because the pattern on their bottoms obviously did not match the pattern found on the bathroom floor.

The defendant claims that exculpatory evidence was unconstitutionally suppressed. See *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *State* v. *Cohane,* 193 Conn. 474, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984). He argues that "[i]f the forensic evidence was available to him, the defendant could have inquired further as to just what these two reports were about and would have been able to bring out the fact that the forensic reports concerned only the [sneakers seized from his residence], and the fact that the footwear seized from the defendant [on the day of his arrest] was not even tested, even though it was never returned to the defendant. . . . The defendant because he did not have these forensic reports was denied the opportunity to inquire and could and would have developed the strange facts of the non-testing of the seized footwear of the defendant on the day of his arrest."

"To come within the strictures of *Brady* . . . it must appear (1) that the prosecution suppressed evidence after a request by the defense; (2) that the evidence was favorable to the defense and (3) that it was material." *State* v. *Altrui,* 188 Conn. 161, 177, 448 A.2d 837 (1982); *State* v. *Elliott,* 8 Conn. App. 566, 576, 513 A.2d 1285 (1986). Where evidence is disclosed to the defendant during trial, it is not "suppressed" within the meaning of *Brady. State* v. *Augustine,* 9 Conn. App. 74, 76, 515 A.2d 1079 (1986). Where, as here, the defendant's

pretrial request for exculpatory information was general, the standard of materiality is that the omitted evidence would have created a reasonable doubt that did not otherwise exist. *State* v. *Cohane,* supra, 496–97.

We fully agree with the analysis of the trial court in denying the defendant's motion for a new trial. With respect to the two forensic reports indicating that the defendant's sneakers did not match the footprints at the crime scene, the court specifically found that he was informed at the start of the trial "that no match was found by the state crime laboratory by comparison of the . . . sneakers with the bloody footwear impressions" found on the bathroom floor. Furthermore, the defendant specifically elicited on cross-examination of the police officer who executed the search warrant that the sneakers were compared to the prints on the bathroom floor, and that they did not match. Thus, although the specific forensic reports may not have been delivered to the defendant, the essential substance of their contents was fully disclosed to him and through him to the jury. Under these circumstances, no unconstitutional suppression occurred. *State* v. *Altrui,* supra; *State* v. *Augustine,* supra; see also *State* v. *Bettini,* 11 Conn. App. 684, 692, 528 A.2d 1180, cert. denied, 205 Conn. 804, 531 A.2d 937 (1987).

With respect to the defendant's boots, the court noted that Paris had testified that the defendant was wearing "soft soled shoes" at the time of the crime, and was wearing "gray boots" the next day when he was arrested. The state made no claim, therefore, that the defendant's gray boots matched the footwear worn by the assailant the day before. Under these circumstances, we fail to see how the nontesting of these boots by the state meets any of the three *Brady* requirements.

There is no error.

In this opinion the other judges concurred.