[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Jeffrey Daniels brought the original petition for habeas corpus, alleging ineffective assistance of his trial counsel, Attorney Edward Gallagher of Danbury. The petition was brought on behalf of petitioner by Attorney Gallagher who alleged, in essence, his own ineffectiveness. After Attorney Gallagher was disqualified by the Court (Kaplan, J.), an amended petition was filed on or about August 16, 1990.
The petition avers three types of ineffectiveness against trial counsel: (a) failure to adequately investigate and develop evidence that petitioner's brother actually committed the crime; (b) failure to present evidence known to counsel before, during, and after petitioner's trial implicating petitioner's brother in the offenses, including several admissions of culpability; and (c) failure to obtain a certification from the trial judge pursuant to Connecticut General Statutes 54-95(a), before appealing the denial of his petition for a new trial.
On October 4, 1985 the petitioner was found guilty of Robbery in the first degree in violation of Connecticut General Statutes Section 53a-134, Burglary in the first degree in violation of Connecticut General Statutes Section 53a-101 and Assault in the second degree on a victim aged sixty or older in violation of Connecticut General Statutes Section 53a-60b. The Appellate Court affirmed the petitioner's conviction in State v. Daniels, 13 Conn. App. 133, (1987).
On October 4, 1985, petitioner through his attorney, made an oral motion for a new trial. On November 8, 1985, the Honorable Francis M. McDonald, Jr., Judge, conducted a hearing with respect to said motion. On November 27, 1985, the CT Page 5072 petitioner filed a motion/petition for new trial on petitioner's behalf. Judge McDonald conducted a hearing on that request on March 11 and 12, 1986. The Court denied the motion by Memorandum of Decision dated April 22, 1986.
The petitioner filed a Petition for New Trial on February 4, 1987 under docket number CV87-0291264S. Judge McDonald conducted a hearing on March 23, 24, 25, 1987 and May 12, 27, 1987. The Court denied the Petition by Memorandum of Decision dated August 25, 1987.
The petitioner filed an appeal from the denial of the Petition for New Trial with the Appellate Court on October 8, 1987. On March 15, 1988, the State filed a "Motion to Dismiss for Lack of Jurisdiction" on the ground that there was no certification that "a question (was) involved in the decision which ought to be reviewed by the Appellate Court" as required under Connecticut General Statutes Section 54-95(a). The Motion to Dismiss was granted on April 22, 1988. The petitioner thereafter filed a Motion for Reconsideration which was denied on June 2, 1988. A Petition for Certification was denied by our Supreme Court on July 8, 1988.
In addition to the claims of ineffective assistance of counsel, the petitioner further alleges error in the application of 54-95(a) to his case. The underlying facts surrounding petitioner's trial and conviction are discussed in State v. Daniels, Supra.
Petitioner claims that he was denied due process of law when his appeal from the denial for a petition for a new trial was dismissed because certification to appeal was not first obtained from Judge McDonald or a judge of either the Supreme or Appellate Court. The language of Section 54-95(a) is mandatory. "No appeal may be taken from a judgment denying a petition for a new trial unless, within ten days after the judgment is rendered, the judge who heard the case or a judge of the supreme court or the appellate court, as the case may be, certifies that a question is involved in the decision which ought to be reviewed. . ." To hold that the court deprived the petitioner of due process of law when it validated the statutory requirement of certification for appeal would be tantamount to finding that the statute is unconstitutional. It is well settled that a statute is presumed to be constitutional and that "parties challenging the constitutionality of a statutory enactment have the burden of showing its invalidity beyond a reasonable doubt." McKinney v. Coventry, 176 Conn. 613, 621 (1979). The petitioner has not sustained his burden.
With respect to the claim that Mr. Gallagher rendered CT Page 5073 ineffective assistance when he failed to obtain certification to appeal, that too must be denied. A criminal defendant is not constitutionally required to have an attorney represent him when making a collateral attack upon a conviction. United States Supreme Court Chief Justice Rehnquist has written:
 We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, a fortiori, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.
Pennsylvania v. Finley, 481 U.S. 551, 95 L.Ed.2d 539, 545-546,107 S.Ct. 1990 (1987). In State v. Asherman, 180 Conn. 141 (1980) our Supreme Court determined that a petition for a new trial is a collateral attack on a prior judgment.
 The petition [for a new trial] is instituted by a writ and complaint served on the adverse party; although such an action is collateral to the action in which a new trial is sought, it is by its nature a distinct proceeding. On the contrary, a motion for a new trial is filed in a case then in progress or pending and is merely a graduation in that case leading to a final judgment. (citations omitted)
Asherman, supra, 144.
The fact that an attorney represents a defendant in a petition for a new trial, does not require that that counsel be "effective" within the parameters of the constitution. The United States Supreme Court in Wainwright v. Torna, 455 U.S. 586,71 L.Ed.2d 475, 102 S.Ct. 1300 (1982) addressed the issue stating:
 Since respondent had no constitutional right to counsel he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely.
Wainwright, supra, 477-478. "If a state is not constitutionally CT Page 5074 required to provide a lawyer, the constitution cannot place any constraints on that lawyer's performance." Miller v. Keeney,882 F.2d 1428, 1432 (Ninth Cir., 1989). Hence, because there is no constitutional right to counsel in a petition for a new trial, there can be and no claim of ineffective assistance.
The remaining issue to be addressed is whether or not Attorney Gallagher rendered less than competent legal assistance to the petitioner during the trial. The petitioner initially was represented by Attorney John Dowling who had been appointed a special public defender. The petitioner's brother, Curtis Daniels, Jr., had been arrested about one week later than the petitioner for an unrelated crime and he was represented by Roland Moots, a public defender. Mr. Moots testified during the habeas proceeding that on March 9, 1985, during his first interview with Curtis, Jr. at the Bridgeport Correctional Center, Curtis, Jr. told Moots that he had committed the crime for which the petitioner had been arrested. Moots had Curtis, Jr. draw a sketch of the crime scene. He advised his client not to tell anybody else about his claimed involvement until he (Curtis, Jr.) was certain that he wanted to confess.
On or about June 20, 1985, Attorney Moots spoke to Attorney Dowling over the telephone. Moots told Dowling that Curtis, Jr. claimed to have been the perpetrator of the offense for which Jeffrey was charged. Dowling made a handwritten memorandum of the conversation that was introduced into evidence during the habeas trial. Dowling also spoke with the petitioner's father on occasion and the father indicated that he thought Jeffrey was innocent of the charges because Curtis, Jr. was the culprit. Although the father urged Mr. Dowling to interview Curtis, Jr., Dowling never did so.
In August, 1985, Dowling was allowed to withdraw as the petitioner's attorney and Edward Gallagher appeared in lieu of him as private counsel. Mr. Gallagher had been retained by the petitioner's father. When Gallagher picked up the file from Dowling, the two had a discussion during which Gallagher was alerted to Curtis, Jr's. alleged involvement. Gallagher's theory of defense ultimately, however, did not include a claim of third-party culpability.
Gallagher did give the "third-party culpability defense" some thought, however. He hired an investigator to find witnesses to whom Curtis, Jr. may have made a confession[1] and to locate witnesses who otherwise would corroborate Curtis, Jr.'s confession. Gallagher felt that without an in-court confession by Curtis Jr., he was unable to present the defense. Gallagher never contacted Attorney Moots either to get his permission to interview Curtis, Jr. or to find out whether or CT Page 5075 not Curtis, Jr. would confess if a habeas issued for his attendance at trial.
There had been several photo arrays assembled by the Danbury police. The victim could not to make a positive identification from any photo spread. Her actual pre-trial identification of the petitioner occurred when the police brought her to a shopping area where the authorities knew the petitioner would be to pick up his pay check.[2] Based upon the description the victim had given of a black male in his late teens or early twenties with short, close cropped hair and a pencil mustache, one of the investigating officers surmised that the petitioner, who had been arrested a few months earlier for another incident, was the culprit. On February 28, 1985 the victim was shown a photo array from which she selected the petitioner's photograph as a look-alike. The victim was shown three additional arrays after the petitioner's arrest. One array contained the photos of both the petitioner and his brother, Curtis, Jr. She did not identify either photo as a look-alike. In another array which contained only Curtis, Jr's. snapshot, she selected a third individual as a possible perpetrator.
Donald Studley, a C.P.A., noticed a black male in the parking area behind his building on the day of the crime. His building was directly across the street from the crime scene on Stevens Street. He watched the male go over to a porch on Stevens Street. He described the male as being about six feet, two hundred pounds, wearing dark pants and a red plaid shirt. After being shown a photo spread, he selected two, one of which was the petitioner's, as being look-alikes[3]. During the hearing on the petition for a new trial, Studley saw both brothers in the courtroom. He testified in the habeas trial that both Daniels brothers resembled the photographs he had selected from the photo array several months earlier.
During the hearing on the petitioner's motion for a new trial, the petitioner's parents remembered Curtis, Jr.'s girlfriend having stored Curtis, Jr.'s clothing in the attic of their home after Curtis, Jr.'s arrest. Among the items of clothing was a pair of Curtis, Jr.'s sneakers, the treads of which were a possible match to the footprints left at the crime scene. The petitioner's shoe treads could not be matched.[4]
The clothing was never produced before or during the trial. According to the petitioner's father, who testified during the habeas trial, any significance the clothing had became apparent only during the hearing on the petition for a new trial.
One other witness discovered after the trial was Angela Davis, the petitioner's sister. While waiting at a bus stop CT Page 5076 about a mile and a half from the crime site, on the morning of the offense she saw Curtis, Jr. pass by in a vehicle.
Attorney Gallagher testified at the habeas proceeding that at the time of the trial it was his belief that in order to pursue the third-party culpability defense, it was essential to have Curtis, Jr. confess to the crime in court, under oath and to have additional evidence to corroborate the confession. Gallagher felt that he could not call Curtis, Jr. to the stand. He conjectured that Curtis, Jr. would refuse to testify and that the trial judge would not allow the witness to invoke his constitutional privilege in front of the jury.
* * * *
Whenever a claim of "ineffective assistance of counsel" is alleged, the issue of deliberate bypass of appeal is automatically satisfied in favor of the petitioner. Tyson v. Warden, 24 Conn. App. 729, 733 (1991). In fact, our Supreme Court has suggested that habeas corpus is the only proper forum to address the issue of ineffective assistance of counsel. See State v. Weber, 221 Conn. 84, 87 (1992). Was Attorney Gallagher ineffective as the petitioner's trial attorney because he failed to pursue a defense of third-party culpability?
The petitioner produced at the habeas trial, Attorney John R. Williams of New Haven, who, as an expert witness, testified that it was his opinion that Mr. Gallagher's actions with respect to the failure to present the third-party culpability defense fell below the standard for reasonably competent criminal defense attorneys in Connecticut in 1985. Mr. Williams opined that when Gallagher received the Daniels file from Dowling, he saw Dowling's note about Curtis, Jr's. admission, and he was put on notice of the third-party culpability defense. That notice demanded appropriate investigation including Gallagher requesting permission of Curtis, Jr's. lawyer, Roland Moots, to interview Curtis, Jr. It is probable, Williams stated, that appropriate investigation surrounding Curtis, Jr's. admission, would have led to the detection of Curtis Jr's. clothing, including the sneakers, in the attic of the parents' house as well as the testimony of Angela, sister of the Daniels brothers, who placed Curtis, Jr. in the vicinity of the crime scene on the morning the crime occurred.
Connecticut's leading case on the admissibility of third-party statements against penal interest exculpatory to a defendant is State v. Gold, 180 Conn. 619 (1980). Our Supreme Court concluded "that a statement against penal interest is one which at the time it is made so far tends to subject the declarant to criminal liability that a reasonable person in the CT Page 5077 declarant's position would not have made the statement unless he or she believed it to be true." Id. at 643. The court adopted the definition of the "Statement Against Interest" contained in Rule 804 of the Federal Rules of Evidence.[5]
As an exception to the hearsay rule, such statements must "demonstrate, both the necessity for admitting the statement and the reliability and trustworthiness of the statement." State v. Frye, 182 Conn. 476, 480 (1980). The necessity factor is met if the declarant is unavailable.[6] Curtis Jr. was presumably unavailable because he would have invoked his testimonial privilege against self-incrimination.
The issue of the trustworthiness of the declaration is met when "`corroborating circumstances clearly indicate the trustworthiness of the statement. . .'". State v. Gold at 631 citing Rule 804 of the Federal Rules of Evidence. Curtis, Jr. admitted committing the crime for which the petitioner stands convicted to his attorney, Roland Moots, and Moots' investigator one Mayo, on March 9, 1985. The offense occurred on February 28, 1985, nine days prior to that confession. He also admitted to his father, Curtis Daniels, Sr., that he was the culpable party, some time toward the end of March, 1985. Hence, Curtis, Jr's. confession was made to at least three different individuals within one month of the occurrence of the crime.
Had Curtis, Jr's. admission been pursued as a defense, Angela's placing him in the vicinity of the crime and the treads of his sneakers would likely have been developed as corroborating evidence. That evidence, coupled with the testimony of Curtis Daniels, Sr., the father, would give the confession sufficient indicia of trustworthiness to meet the test set forth in Gold. Certainly, the evidence is relevant and would be admissible under the rationale set forth in State v. Echols, 203 Conn. 385, 392-393 (1987).
The fundamental "right to counsel is the right to the effective assistance of counsel." Johnson v. Commissioner,218 Conn. 403. 424 (1991). The right to the effective assistance of counsel at trial is guaranteed to a criminal defendant by the sixth and fourteenth amendments to the Constitution of the United States and by Article first, Section 8 of the Constitution of the State of Connecticut. See Fair v. Warden,211 Conn. 398, 401 (1989). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-688 (1984). See also Quintana v. Warden, 220 Conn. 1 (1991) and Tyson v. Warden, 24 Conn. App. 729
(1991). Our Supreme Court cautioned in Quintana that the CT Page 5078 reviewing court "must be highly deferential" when reviewing trial counsel's conduct. The Gold decision adopting the Federal Rule respecting third-party confessions/unavailable witness was published approximately five years prior to the Daniels trial. There is no question in this court's mind that Mr. Gallagher's failure to apprise himself about the state of our law on so crucial an issue for trial fell outside "the wide range of reasonable professional assistance." Quintana at 5.
To satisfy the second prong of the Strickland test, this court must be convinced that there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, supra, 687, 694; See also State v. Talton, 197 Conn. 280,287 (1985). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Strickland at 694.
The strength of the State's case at trial was the in-court identification of Jeffrey Daniels by the victim. She was unable to make any positive identification from photographs prior to the trial. She had identified him at the shopping center, where the police had taken her prior to the petitioner's arrest, because the authorities suspected Jeffrey Daniels was the culprit. The better testimony and evidence presented during the habeas corpus trial showed that the petitioner was the only black male at the shopping center the morning he was identified.
The Daniels brothers physically resemble one another. They are black. The identifying witness is white. The court is not unmindful of problems associated with eyewitness identifications. See, for example, State v. Wright, 9 Conn. App. 275, 282-283
(1986). Had Daniels' trial counsel presented evidence of Curtis, Jr's. culpability, it is reasonably probable that a reasonable doubt about Jeffrey Daniels' guilt would have arisen in the minds of the trier. The jury's verdict, therefore, has been rendered unreliable.
For the foregoing reasons, the petition for a writ of habeas corpus is granted. The petitioner's conviction is hereby vacated and a new trial is ordered.
BY THE COURT,
SCHEINBLUM, J.