******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ANTONIO J. INGLIS
(AC 35750)

DiPentima, C. J., and Gruendel and Alvord, Js.

*Argued March 20—officially released July 1, 2014*

(Appeal from Superior Court, judicial district of
Middlesex, Clifford, J.)

*Conrad Ost Seifert*, assigned counsel, for the appel-
lant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney,

with whom, on the brief, were *Peter A. McShane*, state's attorney, and *Timothy J. Liston*, former state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Antonio J. Inglis, appeals from the judgment of conviction, rendered after a jury trial, of two counts of murder in violation of General Statutes § 53a-54a (a),[1] and one count each of capital felony in violation of General Statutes § 53a-54b (7),[2] assault in the first degree in violation of General Statutes § 53a-59 (a) (5),[3] and carrying a pistol without a permit in violation of General Statutes § 29-35 (a).[4] The defendant claims that the court improperly declined (1) to instruct the jury in accordance with two of his proposed eyewitness identification instructions, and (2) to provide a third party culpability instruction to the jury.[5] We affirm the judgment of the trial court.

The jury reasonably could have found that, in the early hours of February 10, 2008, an altercation ensued at the Cocktails on the Green nightclub (club) in Cromwell that left two men dead and another wounded. The altercation began when the defendant repeatedly antagonized one of the victims, Tyrese Lockhart, a patron seated at the bar with friends. Lockhart and his friends eventually confronted the defendant and asked him to leave Lockhart alone. A group of the defendant's friends that included his brother, Daren Walls, likewise encouraged the defendant to leave Lockhart alone. When Israel Dandrade, a disc jockey who was performing at the club that evening, announced "last call" soon thereafter, Lockhart headed toward an exit with friends. At that moment, the defendant brandished a chrome revolver and fired several shots in Lockhart's direction. One shot struck Lockhart in the head, another struck Dandrade in the eye, and a third grazed the cheek of Kenneth Lewis, a cook at the club. Lockhart and Dandrade died as a result of their respective gunshot wounds.

The defendant subsequently was arrested and charged with the aforementioned offenses. A jury trial followed, at which the state presented eyewitness testimony from multiple individuals identifying the defendant as the shooter.[6] The theory advanced by the defense was that, due to the facial similarity between Walls and the defendant, those witnesses could not distinguish between the two brothers to properly identify the shooter.[7] At the conclusion of trial, the jury found the defendant guilty on all counts. The court rendered judgment in accordance with that verdict and sentenced the defendant to a total effective term of life imprisonment without the possibility of release, plus twenty five years.[8] From that judgment, the defendant now appeals.

I

The defendant alleges instructional error on the issue of eyewitness identification. Specifically, he claims that the court improperly declined to instruct the jury in accordance with two of his proposed instructions

regarding "identification based on own recollection" and "honest mistake."[9]

Practice Book § 42-18, which specifies the form and content requirements of requests to charge, provides in relevant part that "[w]hen there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated *with the citation of authority upon which it is based, and the evidence to which the proposition would apply. . . .* " (Emphasis added.) As our Supreme Court repeatedly has explained, "[w]hile this court does not favor unyielding adherence to rules of procedure where the interests of justice are thereby disserved . . . the ever increasing refinement of our law justifies cooperation of counsel in stating requests for jury instruction. The minor burden of cooperation imposed by [Practice Book § 42-18] is neither unreasonable nor novel." (Internal quotation marks omitted.) *State* v. *Corbin*, 260 Conn. 730, 747, 799 A.2d 1056 (2002).

It is undisputed that the defendant did not comply with the prerequisites of Practice Book § 42-18. His request to charge on eyewitness identification did not cite to any legal authority, nor did it specify any evidence to which the propositions allegedly applied. Significantly, this is not a case in which the record contains "substantial additional support . . . such as detailed colloquies with the court and opposing counsel and a postcharge exception [indicating that] . . . the trial court is informed adequately of the factual and legal bases for the instructional request." *State* v. *Smith*, 262 Conn. 453, 466, 815 A.2d 1216 (2003). Rather, the record before us is bereft of any discussion of this specific issue; the defendant did not raise it during the charging conference or take a postcharge exception. The court, therefore, properly could have denied those requests to charge on the basis of the defendant's noncompliance with § 42-18. See *State* v. *Bettini*, 11 Conn. App. 684, 690, 528 A.2d 1180 ("[i]n the absence of compliance with the rules of practice, the trial court is entitled to deny a request to charge"), cert. denied, 205 Conn. 804, 531 A.2d 937 (1987); accord *State* v. *Tomasko*, 238 Conn. 253, 262–63, 681 A.2d 922 (1996) (trial court properly denied request to charge that did not comply with rules of practice).

The defendant also argues that his claim is reviewable pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). He is mistaken. As this court has observed, "[n]ot every claim of instructional error is constitutional in nature. *State* v. *LaBrec*, 270 Conn. 548, 557, 854 A.2d 1 (2004). Our Supreme Court repeatedly has noted that it has recognized instructional claims as raising constitutional issues only in matters relating to the elements of an offense, burden of proof and the presumption of innocence. Id.; see also *State* v. *Schi-*

*appa*, 248 Conn. 132, 165, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999); *State* v. *Dash*, 242 Conn. 143, 151–52, 698 A.2d 297 (1997); *State* v. *Walton*, 227 Conn. 32, 64–65, 630 A.2d 990 (1993). The defendant's claim does not pertain to the elements of the offenses in question, the state's burden of proof or the presumption of innocence, nor does the defendant make such an argument. Accordingly, it does not merit *Golding* review." *State* v. *Antwon W.*, 118 Conn. App. 180, 201, 982 A.2d 1112 (2009), cert. denied, 295 Conn. 922, 991 A.2d 568 (2010). That logic applies equally in the present case.

Claims pertaining to the adequacy of a court's instructions on misidentification are not constitutional in nature. See *State* v. *Cerilli*, 222 Conn. 556, 567, 610 A.2d 1130 (1992) (identification instruction not constitutionally required); *State* v. *Tillman*, 220 Conn. 487, 501, 600 A.2d 738 (1991) ("[e]ven if the court's instructions were less informative on the risks of misidentification than they might have been, the issue is at most one of instructional error rather than of constitutional error"), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992); *State* v. *Anderson*, 20 Conn. App. 271, 281, 566 A.2d 436 (1989) ("there is no constitutional right to an instruction on the fallibility of eyewitness identifications"), cert. denied, 213 Conn. 813, 569 A.2d 549 (1990). As such, the defendant cannot satisfy the second prong of *Golding*.

II

The defendant also claims that the court committed reversible error when it declined to provide a third party culpability instruction to the jury. We disagree.

The following additional facts, which the jury reasonably could have found, are relevant to this claim. Walls was the defendant's brother and bore a strong facial resemblance to him. He did not physically resemble the defendant. Unlike the defendant, who stood five feet, seven inches tall with a "husky" and "more muscular" build, Walls was five feet, ten inches tall and had a "slim" physique. At the time of the shooting, Walls' hair was braided in cornrows, whereas the defendant's hair was short and curly.[10] The two also were dressed differently at that time. The defendant wore a black knit cap, a baggy grey jacket with yellow trim, jeans, and tan boots. By contrast, Walls had on a fitted and light-colored jacket with a large emblem on the upper left chest, jeans, and no cap.

Lockhart was seated at the bar when the defendant began antagonizing him. After several minutes, Lockhart turned around and said, "I don't even know who you are, who are you, leave me alone . . . what is the problem?" As Lockhart turned back to the bar to finish his drink, Walls intervened and attempted to calm the defendant. Walls told the defendant to "let it go" and

made a "calm down" gesture with his hands. The defendant nevertheless refused to "let it go" and remained agitated. Walls continued his efforts to calm the defendant, telling him to "chill, just let it go, back up . . . ."[11] Lockhart was fatally shot soon thereafter.

At trial, the defendant submitted a request to charge that sought, inter alia, an instruction on third party liability.[12] During the charging conference, defense counsel explained why he thought that instruction was appropriate, stating: "There's a lot of controversy as to—with respect to where the shooter was and who was shooting. . . . Certainly, based on the testimony that's brought out [Walls] as being—looking similar to [the defendant with] one witness saying he looks exactly alike, we believe it's more than appropriate for the court to give such an instruction . . . ." The court responded: "The only reason I disagree with that [is] your classic third party culpability is usually the defense . . . after some kind of evidentiary hearing or motion, is attempting to put in evidence of third party culpability that someone else had the motive and opportunity and there has to be corroboration, et cetera, that someone else may have committed the crime. It's usually somebody totally independent. Many times it happens in those cases that are real 'whodunit' type of a case. A situation here which, to me, is fairly typical . . . there's an issue where there is a shooting and there may be more than one group involved and there may be an issue [as] to who, in fact, pulled a trigger. And I don't see that as classic third party culpability because, in this case, and I do feel it's appropriate, I'm giving a more extensive charge on identification of the person who actually caused the death of the two individuals here. And I think that type of charge, basically, covers it. . . . I don't think factually, there's much of a question that two people died as a result of gunshot wounds, but the main issue for [the jury] is who, in fact, did that? So, I think that covers it adequately. I really don't see it as a classic third party culpability [situation], and I think the instructions are adequate."

The charge ultimately provided to the jury contained detailed instructions on eyewitness identification, which the defendant concedes comport with the model instructions provided on the Judicial Branch website. In addition, the court specifically instructed the jury that "you must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may find him guilty on any charge. In short, you must consider the totality of the circumstances effecting the identification. Remember, the state has the burden to not only prove every element of the crime, but also the identity of the defendant as the perpetrator of the crime. You must be satisfied beyond a reasonable doubt of the identity of the defendant as the one who committed the crime or you must find the defendant not guilty."

Our Supreme Court outlined the standards applicable to claims concerning jury instructions on third party culpability in *State* v. *Arroyo*, 284 Conn. 597, 607–610, 935 A.2d 975 (2007). It stated in relevant part: "[A] defendant has a right to introduce evidence that indicates that someone other than the defendant committed the crime with which the defendant has been charged. . . . The defendant must, however, present evidence that directly connects a third party to the crime. . . . It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused." (Internal quotation marks omitted.) Id., 609. "Because the standards governing the admissibility of third party culpability evidence require that the trial court determine that such evidence be relevant to the jury's determination of whether a reasonable doubt exists as to the defendant's guilt, we conclude that those same standards should govern whether a trial court should give an appropriate instruction on third party culpability. Put another way, if the evidence pointing to a third party's culpability, taken together and considered in the light most favorable to the defendant, establishes a direct connection between the third party and the charged offense, rather than merely raising a bare suspicion that another could have committed the crime, a trial court has a duty to submit an appropriate charge to the jury."[13] Id., 610. A trial court's determination as to whether the evidence in a given case establishes a direct connection between the third party and the criminal offense is subject to the abuse of discretion standard of review. *State* v. *Jackson*, 304 Conn. 383, 424, 40 A.3d 290 (2012).

The defendant maintains that his request for a third party culpability instruction was appropriate in light of the evidence that (1) "Walls and the defendant look alike, Walls was present when the shooting occurred, and Walls had a motive to shoot Lockhart, namely, that he was in a group that got in a confrontation with Lockhart and his group"; and (2) at least one witness testified that the shooter's hair was braided in cornrows.[14] For the following reasons, that claim is untenable.

## A

As discussed in part I of this opinion, Practice Book § 42-18 obligated the defendant to apprise the court of the evidentiary basis of the proposed charge. His written request to charge failed to do so, as it contained no reference to any evidence whatsoever. At the charging conference, defense counsel offered the following evidentiary basis for his proposed third party culpability instruction: "Certainly, based on the testimony that's brought out [Walls] as being—looking similar to the [defendant with] one witness saying he looks exactly

alike, we believe it more than appropriate for the court to give such an instruction . . . ." The mere fact that Walls bore a facial resemblance to the defendant and was present at the club does not establish "a direct connection between the third party and the charged offense, rather than merely raising a bare suspicion that another could have committed the crime, [such that] a trial court has a duty to submit an appropriate charge to the jury"; *State* v. *Arroyo*, supra, 284 Conn. 610; particularly when the jury heard ample testimony that Walls attempted to calm the defendant and to diffuse the situation immediately prior to the shooting. Accordingly, we cannot say that the court improperly declined to instruct the jury on the proposed charge when the evidentiary basis proffered by the defendant plainly did not meet that standard.

B

To the extent that the defendant's claim on appeal is predicated on witness testimony allegedly identifying the shooter as one with cornrows; see footnote 14 of this opinion; he cannot prevail. That distinct claim was never presented to the trial court as a basis for the request to charge. As a result, the court did not have an opportunity to rule on this matter. "[I]t is well established that [o]ur rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path [the party] rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks omitted.) *State* v. *Fourtin*, 307 Conn. 186, 208, 52 A.3d 674, 688 (2012); see also Practice Book § 60-5 (appellate courts "shall not be bound to consider a claim unless it was distinctly raised at the trial"). For that reason, "[o]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." (Internal quotation marks omitted.) *State* v. *Canales*, 281 Conn. 572, 579, 916 A.2d 767 (2007).

Furthermore, *Golding* review of this unpreserved claim is unwarranted, as it "does not pertain to the elements of the offenses in question, the state's burden of proof or the presumption of innocence . . . ." *State* v. *Antwon W.*, supra, 118 Conn. App. 201. The defendant nevertheless relies on *State* v. *Small*, 242 Conn. 93, 104, 700 A.2d 617 (1997), which held that "*a defendant who has produced evidence supporting a legally recognized defense* is entitled, as a matter of law, to a theory of defense instruction, and that the denial of such an instruction is a violation of due process." (Emphasis added.) A fortiori, to establish a claim of constitutional magnitude under *Small*, the requested charge must implicate a legally recognized defense. See *State* v. *Rosado*, 178 Conn. 704, 708, 425 A.2d 108 (1979) ("only when evidence indicating the availability of [a] legally recognized [defense] is placed before a jury is a defen-

dant entitled as a matter of law to a theory of defense instruction" [emphasis omitted]). Examples of legally recognized defenses include entrapment; *State* v. *Golodner*, 305 Conn. 330, 351, 46 A.3d 71 (2012); self defense; *State* v. *Havican*, 213 Conn. 593, 603, 569 A.2d 1089 (1990); *State* v. *Fletcher*, 10 Conn. App. 697, 707, 525 A.2d 535 (1987), aff'd, 207 Conn. 191, 540 A.2d 370 (1988); duress; *State* v. *Fuller*, 199 Conn. 273, 277, 506 A.2d 556 (1986); and affirmative defenses. *State* v. *Small*, supra, 242 Conn. 102. It is well established that "[a] claim of innocence or a denial of participation in the crime charged is not a legally recognized defense and does not entitle a defendant to a theory of defense charge." *State* v. *Rosado*, supra, 707; accord *State* v. *Golodner*, supra, 352. A claim of third party culpability is a denial of participation in the crime and, hence, not a legally recognized defense. The defendant therefore is not entitled to *Golding* review of that unpreserved claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or a third person . . . ."

[2] General Statutes § 53a-54b provides in relevant part: "A person is guilty of a capital felony who is convicted of any of the following . . . (7) murder of two or more persons at the same time or in the course of a single transaction . . . ."

[3] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

[4] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ."

[5] The defendant also invites this court to exercise its supervisory authority over the administration of justice to require more detailed eyewitness identification jury instructions. We decline that invitation.

[6] Brothers Maurice Overton and Andre Overton were at the club at all relevant times. Maurice Overton testified at trial that he saw the defendant holding a gun at the time of the shooting. Andre Overton similarly testified that when the gunshots rang out, he turned and saw the defendant holding a chrome gun in his hand. Andre Overton was approximately five feet behind the defendant at that time. Qualnisha Lowe also identified the defendant as the shooter at trial. She testified that, at the time of the shooting, she was two feet from the defendant and "looked right in his face." Nestor Diaz testified that at the time of the shooting, he was approximately five feet from the person holding the gun and was "confident" in his identification of the defendant as the shooter.

Dana Middleton was socializing with Lockhart at the club and witnessed the defendant antagonizing Lockhart prior to the shooting. He testified that the defendant was approximately ten feet away and "kept dancing around and pointing his fingers and grabbing his meat and making gestures like he was making . . . threats, basically." The defendant then approached Lockhart and Middleton and stated that "[t]hese motherfuckers don't want it with us. They don't want no problems." Middleton responded, "Yeah, you're right. Don't nobody really want no problems." As tensions rose, the defendant was "[a]cting like a monkey; basically, like a monkey that wants to fight somebody or have problems. . . . [A]cting like he's ready to do something. He's ready to fight. He's amped up. He can't stand still." The defendant continued to gesture at Lockhart. Moments later as Middleton and Lockhart were leaving the bar, Middleton heard gunshots and then saw Lockhart on the ground with a hole in his head and brain matter on the floor. Middleton

then saw the defendant approximately five feet away holding a gun that was pointed in his direction.

[7] In his closing argument, defense counsel stated in relevant part that "[t]his is a misidentification case . . . . And you know it is the defense's assertion that [Walls] is the shooter in this case."

[8] Specifically, the court sentenced the defendant to a term of life imprisonment without the possibility of release on the capital murder charge, with which it merged the two murder counts. The court then sentenced the defendant to a twenty year term of incarceration on the assault count and a five year term of incarceration on the carrying a pistol without a permit count, both of which the court ordered to run consecutively to the other sentences.

[9] In his principal appellate brief, the defendant acknowledges that "[t]he court's instructions comport with the model instructions published on the state of Connecticut's Judicial [Branch] website . . . ."

[10] Cornrows is "a hairstyle in which the hair is divided into sections and braided close to the scalp in rows." *State* v. *Elliston*, 86 Conn. App. 479, 481 n.2, 861 A.2d 563 (2004), cert. denied, 273 Conn. 906, 868 A.2d 746 (2005).

[11] Diaz testified at trial that "[r]ight before the shot went off . . . someone was talking to [the defendant] trying to calm him down, or it seemed like they were trying to, you know, talk some sense into him or something like that." Yakeima Blake testified that it was a taller "guy with the braids" who attempted to calm the individual antagonizing Lockhart by the bar. Middleton likewise testified that, as the defendant antagonized Lockhart, "there was a person right next to him. . . . He looked like a taller version of [the defendant]."

[12] The requested charge stated: "You have heard evidence in this case from several eyewitnesses that someone other than [the defendant] committed these crimes. This type of evidence is known as third party guilt. As I already made clear to you, the state has the burden of proving the defendant's guilt beyond a reasonable doubt. It must prove all the elements of the crime, including that it was the defendant, and not some other person, who was the perpetrator. This burden rests on the state at all times; the defendant has no burden of proof whatsoever, on this or any other issue. The question presented by third party culpability evidence is not whether the guilt of another person has been proven, but whether, after a full consideration of all the evidence in this case, there is a reasonable doubt that [the defendant] was the perpetrator. Evidence that a third party may have committed this crime may, if credited, tend to raise a reasonable doubt as to whether the state has met its required burden to prove the identity of the defendant as the perpetrator. If, after considering all of the evidence, you have a reasonable doubt as to the defendant's guilt, you must find the defendant not guilty. See generally *State* v. *Echols*, [203 Conn. 385, 524 A.2d 1143] (1987)."

[13] In his principal appellate brief, the defendant asks us to revisit that authority, arguing that "imposing the 'direct connection' requirement is overly restrictive." We decline to do so. As an intermediate appellate tribunal, this court is not free to depart from or modify the precedent of our Supreme Court. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 48–49, 994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010).

[14] At trial, Detective Denise LaMontagne of the Cromwell Police Department acknowledged that, as part of her investigation into the shooting, she had a description from "at least one, maybe two witnesses, that the shooter had cornrows." Also, during his cross-examination, the following colloquy transpired between Diaz and defense counsel:

"[Defense Counsel]: Your statement also says that the shooter had cornrows coming down the back of his head. Correct?

"[Diaz]: Yes, that it might—that it might be, yeah. Curly hair; might have been cornrows.

"[Defense Counsel]: Is your testimony that your statement says he might have had cornrows or that he did?

"[Diaz]: If I can read the statement, I'll clarify it.

"[Defense Counsel]: Certainly. You said either maybe or he did—was wearing cornrows hanging out of his hat, though. Correct?

"[Diaz]: From what I can remember, yeah."